IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CDIC OF NC PROTECTED CELL A-600 LLC**, **AQUAMARINE RISK MANAGEMENT LLC,** **AQUAMARINE POOLS OF HOUSTON LLC AND AQUAMARINE POOLS OF TEXAS LLC,** § § § § § § § | | |
| **PLAINTIFFS,** § § | | |
| VS. § § § | CASE NO. _____ | |
| **JOSHUA GOTTLIEB, THE GOTTLIEB ORGANIZATION LLC, CDIC OF NORTH CAROLINA, LLC, CAPITAL DEVELOPMENT INSURANCE COMPANY, LLC, ASSET RETENTION TRUST CO., LLC, ENERGY REDEVELOPMENT COMPANY, INC., GGR REALTY MANAGEMENT, LLC, ADVANCED CAPTIVE DEVELOPMENT ADVISORS LLC, AND FORENSIC PLANNING CONSULTANCY, LLC AND ADVANCED CAPTIVE, MANAGEMENT COMPANY LLC,** § § § § § § § § § § § § § § § | **JURY DEMANDED** | |
| **DEFENDANTS.** § § | | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

Plaintiffs, CDIC of NC Protected Cell A-600 LLC, Aquamarine Risk Management LLC, Aquamarine Pools of Houston LLC and Aquamarine Pools of Texas LLC (individually and collectively, "Plaintiffs") file this Original Complaint, complaining of Defendants, Joshua

**PLAINTIFF'S ORIGINAL COMPLAINT**

Gottlieb, The Gottlieb Organization LLC, CDIC of North Carolina, LLC, Capital Development Insurance Company LLC, Asset Retention Trust Co., LLC, Energy Redevelopment Company LLC, GGR Realty Management LLC, Advanced Captive Developer Advisors LLC, Forensic Planning Consultancy and Advanced Captive Management Company LLC, (jointly and severally, "Defendants"), respectfully showing the Court as follows:

## I.  PARTIES, JURISDICTION & VENUE

1. CDIC of NC Protected Cell A-600 LLC is a North Carolina limited liability company whose principal place of business in Texas is located at 25730 Interstate 45, Spring, TX 77386.

2. Aquamarine Risk Management LLC is a Delaware limited liability company and the sole member of Cell A-600 whose principal place of business is located at 25730 Interstate 45, Spring, TX 77386.

3. Aquamarine Pools of Houston LLC is a Texas limited liability company whose principal place of business is located at 25730 Interstate 45, Spring, TX 77386.

4. Aquamarine Pools of Texas LLC is a Texas limited liability company whose principal place of business is located at 8360 N. Interstate 35, Georgetown, TX.

5. Joshua Gottlieb is a resident of Ohio who regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. He may be served with process at his principal place of business located at 200 Public Square, Suite 3210, Cleveland, OH, 44114, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

6.     The Gottlieb Organization LLC is a Delaware limited liability company whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland, OH, 44114. TGO regularly transacts, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Business Filings Incorporated, at its registered office located at 108 West 13th St., Wilmington, DE 19801, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

7.     CDIC of North Carolina, LLC is a North Carolina limited liability company whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland, OH, 44114. CDIC regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, William H. Brinker, at its registered office located at 10600 Nations Ford Rd., Charlotte, NC 28273, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

8.     The Asset Retention Trust Co. LLC is a Delaware limited liability company whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland, OH, 44114. ART regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Business Filings Incorporated, at its registered office located at 108 West 13th St., Wilmington, DE 19801, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

9. Energy Redevelopment Company, Inc. is a Delaware corporation whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland OH, 44114. ERC regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Business Filings Incorporated, at its registered office located at 108 West 13th St., Wilmington, DE 19801, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

10. GGR Realty Management LLC is a Delaware limited liability company whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland OH, 44114. GGR regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Business Filings Incorporated, at its registered office located at 108 West 13th St., Wilmington, DE 19801, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

11. Advanced Captive Development Advisors LLC is a Delaware limited liability company whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland, OH, 44114. ACDA regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Business Filings Incorporated, at its registered office located at 108 West 13th St., Wilmington, DE 19801, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

12. Forensic Planning Consultancy LLC is an Ohio limited liability company whose principal place of business is located at 18 North Main Street, Suite 200, Chagrin Falls, OH, 44022. FPC regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Joshua Gottlieb, 18 North Main Street, Suite 200, Chagrin Falls, OH 44022, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

13. Advanced Captive Management Company LLC is a Delaware limited liability company whose principal place of business is located at 200 Public Square, Suite 3210, Cleveland, OH, 44114. ACMC regularly transacts business, and has purposefully directed certain conduct towards Plaintiffs, in Harris County, Texas and elsewhere in this judicial district. It may be served with process by serving its registered agent, Business Filings Incorporated, at its registered office located at 108 West 13th St., Wilmington, DE 19801, or at any other location as authorized by the FEDERAL RULES OF CIVIL PROCEDURE.

## II. JURISDICTION & VENUE

14. Jurisdiction is proper in this Court under 28 U.S.C. §§ 1332(a) and 1367 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

15. All conditions precedent have been performed or have occurred. All Exhibits attached hereto are incorporated by reference and they are true and correct copies of the originals.

## III. BACKGROUND FACTS

16. Donna and Mark Naras are the owners of a group of affiliated companies commonly known as Aquamarine Pools & Spas ("Aqua"), including Aquamarine Pools of Houston LLC, Aquamarine Pools of DFW LLC, Aquamarine Pools of Texas LLC, Aquamarine Pools of San Antonio LLC, Aquamarine Pools of Beaumont LLC and Aquamarine Pools of Corpus Christi LLC. Aqua was founded in Houston in 1997 and has grown to become the largest in-ground fiberglass pool dealer in the United States.

17. In or about June 2014, the Naras's were in the process of looking for someone to assist them with financial, retirement and estate planning. They were referred to Jeffrey Smith, a Certified Public Accountant and Certified Financial Planner based in Ohio. Mr. Smith had his own independent accounting practice at the time, but was also employed by a number of entities owned by Joshua Gottlieb, including Forensic Planning Consultancy LLC ("FPC").

18. FPC is a firm that purports to provide a variety of financial planning services. In his capacity as an employee of FPC, in mid-June 2014 Smith and the Naras's met to discuss ways in which FPC could assist with the Naras's financial planning needs. After those discussions, Smith sent a letter to the Naras's on June 20, 2014 in which he referenced the topics of their discussion, including business profitability, business growth model, business overhead and profitability and tax planning. On June 24, 2014, the Naras's entered into a written retainer agreement with FPC under which FPC was to spend 60-90 days evaluating the Naras's situation so that it could make recommendations.

19. Smith and the Naras's then met in Harris County, Texas on September 5, 2014 to discuss the results of FPC's evaluation. The discussion covered several topics, including asset

building, estate planning and tax planning. At a more detailed level, some of the tax planning included discussions regarding the establishment of a "captive insurance" company to be managed and operated by Joshua Gottlieb and his entities.

20. Gottlieb is the founder of The Gottlieb Organization LLC ("TGO") and is also, in one capacity or another, the owner of all of the corporate Defendants in this case. TGO is a company that provides what Gottlieb refers to as "wealth management, asset protection, wealth transfer, insurance services, finance, risk management, consulting, investment advisory, financial management" services, according to its website. Among the types of financial services offered by TGO is the establishment of captive insurance companies that have a tax-advantaged component to their structure.

B.  **CAPTIVE INSURANCE COMPANIES**

21. Generally speaking, a captive insurance company works as follows. The owners of an existing business form a separate entity to act as an insurance company to insure the risks of the existing business. The existing business then pays premiums to the insurance company but because the premiums typically are not sufficient to cover catastrophic claims, the captive insurance company also acquires reinsurance for those types of claims. Reinsurance coverage is acquired by pooling together a group of other captive insurance companies who reinsure one another, and all of the captives in a given pool are managed by a single captive insurance provider.

22. One such captive insurance provider is a company owned by Gottlieb called Capital Development Insurance Company LLC ("CDIC Delaware"), a series LLC organized under the laws of Delaware. Within CDIC Delaware were numerous "series business units"

("SBU's"), each of which was a separate, independently owned limited liability company that was established as captive insurance company. In this case, Gottlieb recommended that the Naras's form a captive to insure the risks of Aquamarine Pools of Houston LLC ("Aqua Houston") and Aquamarine Pools of Texas LLC ("Aqua Texas"), and further recommended that the Naras's captive should be managed by Gottlieb's CDIC Delaware. These recommendations were made to the Naras's in Harris County, Texas.

23. Relying on the representations and advice of Gottlieb and FPC, which were made to the Naras's in Harris County, Texas, the Plaintiffs agreed to form a captive insurance company to insure the risks of Aqua Houston and Aqua Texas. In December 2014, CDIC allegedly submitted an application to the Delaware Department of Insurance ("DDOI") on behalf of the Naras's to establish Series A-600 of Capital Development Insurance Company LLC ("Delaware Captive"), a captive insurance company to be housed within Gottlieb's CDIC Delaware. The Delaware Captive's sole member was Aquamarine Risk Management LLC ("ARM"), a Delaware limited liability company organized by TGO's in-house general counsel on December 17, 2014 for the purpose of owning the Delaware Captive. ARM, in turn, is owned by the Naras's and their business partner John Mehrman[1].

24. In conjunction with the application that was submitted to DDOI to establish the Naras's Delaware Captive, Aqua Texas paid a premium to Gottlieb's CDIC Delaware in the amount of $385,000 from its bank account in Texas. A binder was issued, and Advanced Captive Management Company LLC ("ACMC") (another Gottlieb company, apparently tasked with managing CDIC) represented that it would deliver to the Delaware Captive (i) a Comparative

---

[1] Mehrman has an ownership interest in certain of the Aqua affiliated entities.

[2] The memorandum says that Delaware Captive or its "designees" would access, etc. The Naras's were the designees of their Delaware Captive.

**PLAINTIFF'S ORIGINAL COMPLAINT**

Net Loss Insurance Policy, (ii) a Reinsurance Agreement, and (iii) CDIC Delaware's Investment Policy Statement ("IPS"). These representations were made by Defendants to the Naras's in Harris County, Texas. Upon information and belief, the Delaware Captive never received either of those documents.

25. On February 4, 2015, CDIC sent a memorandum to the Naras's in Harris County, Texas in which it informed them that in order to comply with unspecified regulatory changes the Delaware Captive would have to establish two bank accounts for its reinsurance premiums, one called a "Related Party Account" that would hold 49% of the reinsurance premiums for risks attributable to the Delaware Captive's affiliates Aqua Houston and Aqua Texas. The other 51% of premiums would be paid to an "Unrelated Party Account" that would go towards reinsuring the risks of other series business units housed within Gottlieb's CDIC Delaware.

26. CDIC Delaware informed the Naras's that they would have signature authority on the Related Party Account,[2] the right to access the account, the right to obtain monthly statements and the right to obtain all other information and transactions in the account. CDIC Delaware was to have authority to access to the account and see the statements but would not have signatory authority on the Related Party Account.

27. Conversely, the Naras's were not to have signature authority on the Unrelated Party Account, but they were informed of their right to access the account, receive monthly statements and otherwise have access to all other information and transactions in that account.

---

[2] The memorandum says that Delaware Captive or its "designees" would access, etc. The Naras's were the designees of their Delaware Captive.

Plaintiffs were never provided with access to the Unrelated Party Account and they have not received monthly statements as promised.

28. CDIC Delaware was to invest the premiums from both the Related Party Account and Unrelated Party Account in accordance with CDIC's IPS. The IPS, according to CDIC, established certain "liquidity minimums to meet actuarily-projected claims obligations."

29. According to the February 4, 2015 memo, CDIC was permitted to withdraw funds from the Unrelated Party Account only to pay claims or to pay fees due to CDIC under the engagement with Advanced Captive Development Advisors LLC ("ACDA"), another company owned by Gottlieb that, upon information and belief, provides some form of "insurance and risk management" services. On November 7, 2014, ACDA sent and invoice to Aqua Houston in which it sought the payment of $40,000 for "Captive Insurance Planning and Risk Management Services Design and Implementation of Captive Plan." Aqua Houston paid the invoice from its bank account in Texas.

30. In late 2015, Gottlieb notified the Naras's that he was pulling CDIC Delaware's captive management business out of Delaware and reorganizing it in North Carolina. On December 3, 2015, Gottlieb formed CDIC of North Carolina LLC ("CDIC NC"). As with CDIC Delaware, CDIC NC is a series LLC within which numerous separate and independent captives are housed, including CDIC of NC Protected Cell A-600 LLC ("NC Captive"), a captive whose sole member is ARM.

C.   **THE FRAUDULENT & OTHER UNLAWFUL ACTS OF DEFENDANTS**

31. Acting on the advice of Gottlieb, from 2015 through 2017 Aqua Houston and Aqua Texas (the insureds of the Delaware Captive and NC Captive), together with the Delaware

Captive and the NC Captive, paid premiums to CDIC Delaware and CDIC NC of at least $1,930,111[3]. Defendants sent invoices for the premiums to Plaintiffs in Harris County, Texas, and the premiums were paid from Plaintiff's bank accounts in Texas. CDIC claims to have invested those premiums in asset-backed insurance notes, mortgages, and something that CDIC refers to as a "general account." The cumulative amounts allegedly invested in each asset class over time are as follows, according to certain information provided by CDIC to ARM:

- asset backed insurance notes: $244,877;
- real estate mortgages: $520,000; and
- general account: $1,085,023 (this number is inaccurate; as set forth in the table below another figure according to further information from Defendants is $1,102,000).

32.     During 2016-2017, the Naras's and Mehrman repeatedly asked Gottlieb to provide financial statements that would identify (i) the assets in which the Plaintiffs' premiums had been invested, and (ii) the performance of those investments. Gottlieb was opaque when it came to describing how the premiums were invested in the "general account."

33.     Finally, on December 6, 2017, Gottlieb sent a letter to the Plaintiffs in which he explained that the "general account" consisted of loans made by the Plaintiffs' NC Captive to three entities owned by Gottlieb: Asset Retention Trust Co. LLC ("ART"), Energy Redevelopment Company LLC ("ERG") and GGR Realty LLC ("GGR"). The loan amounts, dates and borrowers are set forth below:

---

[3] For the sake of simplicity, from this point forward in the Complaint, CDIC Delaware and CDIC of NC will be referred to jointly and severally as "CDIC" unless otherwise specified.

| Gottlieb-Owned Entity | Loan Amount | Date of Loan |
|---|---|---|
| ART | $150,000 | 12.24.15 |
| ART | $270,000 | 4.6.16 |
| ERG | $50,000 | 12.2.16 |
| ERG | $100,000 | 4.28.17 |
| ERG | $50,000 | 4.20.17 |
| GGR | $125,000 | 6.17.16 |
| GGR | $175,000 | 11.16.17 |
| GGR | $50,000 | 1.9.17 |
| GGR | $100,000 | 4.21.17 |
| GGR | $32,000 | 5.23.17 |

| | | |
|---|---|---|
| Total: | $1,102,000 | |

These "loans" to the Plaintiff's NC Captive are documented by a number of promissory notes ("Notes"). The "loans" were purportedly authorized by ARM (the NC Captive's sole member) but Defendants failed to adequately disclose certain material information regarding the Notes, such as the fact that <u>loan repayments were not to be made to the NC Captive that "loaned" the money but were instead to be made to the Gottlieb-owned ACDA</u>. Gottlieb further is responsible for transferring the Plaintiffs' money from their NC Captive Unrelated Party Account to the Gottlieb-owned entities without first adequately disclosing to the Plaintiffs the true nature of the loans or assets securing the loans. To this day, Plaintiffs know only that their money has been "loaned" to Gottlieb-owned entities, but Gottlieb has refused to disclose how that money is being used or for what purposes, and has failed and refused to make any payments to the NC Captive.

34. Gottlieb further failed to adequately disclose the obvious conflicts of interest that existed by borrowing money from the clients to whom he owed a fiduciary duty, but without first (i) disclosing the nature of the underlying investments, (ii) obtaining an adequate written conflict of interest waiver, or (iii) advising Plaintiffs that they should consult with their own independent counsel prior to any of the transactions. Had such disclosures been made and the Plaintiffs consulted with their own counsel, none of the transactions at issue would have been approved.

35. Moreover, the Notes contain egregious, unreasonable and unconscionable terms. For example, one Notes signed by Gottlieb's ART company contains a 15-year repayment term

but does not require ART to make any payments until the end of the 15-year period, and grants the borrower the option of accruing interest for 15 years instead of making any interest payments, effectively giving Gottlieb and his entity sole control and use of the Plaintiffs money for a 15-year period. As to the remainder of Notes, interest was to be paid at the rate of 6% in arrears annually, but Defendants have not made a single interest payment on any of the Notes and Defendants are, accordingly, in default. Through his various entities Gottlieb is, upon information and belief, using the Plaintiffs' money to invest in illiquid personal investments such as real estate, and to finance his lifestyle.

36. In December 2017 Plaintiffs informed Gottlieb that they would not be renewing their captive insurance program with CDIC, but would be transferring it to a different captive insurance program provider. Defendants agreed to the arrangement. As part of the agreement, CDIC agreed that it would liquidate the Notes that comprise the general account in exchange for a fee of $15,000, and transfer the cash as directed by the Plaintiffs.

37. Five months later, in early May 2018 Gottlieb contacted Donna Naras in Harris County, Texas and instructed her to send a letter to him formally requesting the termination and dissolution of the NC Captive and authorizing CDIC to deduct the payment of $15,000 from NC Captive's account. Gottlieb further informed Mrs. Naras that the dissolution process would take approximately 45 days. Mrs. Naras sent the letter as requested, and Defendants deducted the $15,000 from the NC Captive's bank account in Texas, but Defendants failed to deliver Plaintiffs' assets to Plaintiff.

38. As part of the dissolution process, Plaintiffs asked Defendants to provide detailed information that would identify the whereabouts of their money, particularly the investments that

comprise the general account. Over the course of the next several months, Gottlieb repeatedly promised to produce a set of financials containing the requested information, financials that CDIC is required to keep and furnish to the North Carolina Department of Insurance ("NCDOI"). As of the filing of this complaint—more than six months after the May 7, 2018 letter—Gottlieb and CDIC have refused to furnish any financial statements to Plaintiffs, and have failed to sufficient financial statements to NCDOI to effect the dissolution of the NC Captive.

39.     As set forth in the operating agreement for the NC Captive, Gottlieb is its Manager. Pursuant to North Carolina law, any member of NC Captive is entitled to inspect the books and records of the company.

40.     On July 16, 2018, counsel for Plaintiffs sent a letter to Gottlieb pursuant to North Carolina G.S. § 55A-16-02 and -03 demanding that Gottlieb produce the following information for inspection:

- all resolutions from Company's inception through the present;

- all accounting records and financial statements of the Company, prepared on an annual basis, from Company's inception through the present, including, without limitation, statements of financial position, cash flow statements, income statements, statements of retained earnings; balance sheets and the general ledger;

- all minutes of the meetings of the Managers (as defined in Company's Operating Agreement);

- copies of any powers of attorney; and

- membership interest transfer records.

Gottlieb had five days within which to produce responsive information but he refused to do so.

41. Plaintiffs have demanded on numerous occasions that Defendants return the $1,102,000, plus interest thereon as promised by Defendants, that is being held hostage in the "general account," but Defendants have failed and refused to do so.

### III. CAUSES OF ACTION

A. **FRAUD & FRAUDULENT INDUCEMENT**

42. Defendants made material representations to Plaintiffs that they knew at the time to be false or which were made without any knowledge of the truth and as positive assertions. Defendants made those representations with the intent that Plaintiffs would rely and act on them, and Plaintiffs reasonably and justifiably relied and acted on the representations. Defendants' material false representations to Plaintiffs have proximately caused damages to Plaintiffs in the minimum amount of $1,102,000, plus interest thereon as promised by Defendants. Due to the intentional and willful nature of Defendants' false representations, Plaintiffs are entitled to and hereby request an award of exemplary damages as provided by applicable law.

B. **FRAUD BY NONDISCLOSURE**

43. Pleading in the alternative, Defendants had a duty to disclose to Plaintiffs all material information relating to (i) the financial condition of Defendants, (ii) the Defendants' true intent in seeking to form a business relationship with Plaintiffs, (iii) Defendants' intended use of the funds sought from Plaintiffs, and (iv) the actual use of the funds "borrowed" from Plaintiffs. Defendants intentionally, knowingly and willfully failed to disclose the material information with the intent that Plaintiffs rely and act upon the Defendants' failure to disclose. Plaintiffs reasonably and justifiably relied and acted upon Defendants' failure to disclose. Defendants' failure to disclose material information caused damages to Plaintiffs in the

minimum amount of $1,102,000, plus interest thereon as promised by Defendants. Due to the intentional and willful nature of Defendants' false representations and failure to disclose, Plaintiffs are entitled to and hereby request an award of exemplary damages as provided by applicable law.

C. **NEGLIGENT MISREPRESENTATION**

44. Pleading in the alternative, Defendants made material representations to Plaintiffs in the course of their business or in one more transactions in which Defendants had a pecuniary interest, and they supplied that false information to Plaintiffs for the guidance of Plaintiffs in their business. Defendants did not exercise reasonable care or competence in obtaining or communicating the information to Plaintiffs. Plaintiffs reasonably and justifiably relied upon Defendants' representations that, in turn, caused damages to Plaintiffs in the minimum amount of $1,102,000.

D. **MONEY HAD & RECEIVED**

45. Pleading in the alternative, Defendants hold money that in equity and good conscience belongs to the Plaintiffs, in the minimum amount of $1,102,000. Defendants would be unjustly enriched by being allowed to retain such funds. Plaintiffs seek judgment against Defendants for all monies that in equity and good conscience belong to Plaintiffs.

E. **CONVERSION**

46. Plaintiffs own and are entitled to possess the $1,102,000 being held hostage by Defendants in the "general account." Without Plaintiffs' proper authorization, Defendants unlawfully assumed and exercised control over Plaintiffs' $1,102,000 to the exclusion of, or inconsistent with, the Plaintiff's rights as an owner of the $1,102,000.

**F.    BREACH OF FIDUCIARY DUTY**

47.    As financial advisors to Plaintiffs, Plaintiffs had a special relationship of trust and confidence with Defendants prior to, and separate from, the parties' agreements. Defendants, moreover, owed a fiduciary duty to Plaintiffs independent of any contractual arrangement. Defendants breached their fiduciary duties to Plaintiffs, which breaches proximately caused damages to Plaintiffs in the minimum amount of $1,102,000.

**G.    CIVIL CONSPIRACY**

48.    Upon information and belief, the Defendants agreed to defraud, convert or otherwise unlawfully take and gain control over Plaintiffs' money; had a meeting of the minds as to a course of action on how to achieve their goal; engaged one or more unlawful, overt acts, all of which proximately caused damages to Plaintiffs in the minimum amount of $1,102,000.

**H.    CONSTRUCTIVE TRUST**

49.    Plaintiffs seeks to impose a constructive trust on its funds in the amount of $1,102,000 that is currently in, or which may come into, the possession, custody, ownership or control of Defendants.

**I.    BREACH OF PROMISSORY NOTE**

50.    Pleading in the alternative, ART, ERC and GGR entered into the promissory notes with the NC Captive as set forth in the table above in the Background Facts section. NC Captive is the owner and holder of the Notes. Defendants failed and refused to make any payments or interest payments due under the Notes and are, therefore, in default under the Notes. The full amount of principal and interest is now past due, delinquent and owing under the Notes,

plus interest thereon. ART, ERC and GGR's breaches of the Notes have caused damages to NC Captive and Delaware Captive in an amount that is within the jurisdictional limits of the Court.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully asks the Court to issue summons for service upon each Defendant, requiring each of them to appear and answer herein; and that upon consideration hereof by the Court or the jury, Plaintiffs recover judgment from Defendants, jointly and severally, as follows:

a. Actual damages against all Defendants in the amount of $1,102,000, plus interest thereon, jointly and severally;
b. Exemplary damages in an amount to be determined by the trier of fact;
c. Reasonable and necessary attorney's fees;
d. Costs of Court herein expended;
e. Prejudgment and post-judgment interest in the maximum amount allowed by law; and
f. All other relief to which Defendants may be entitled.

Respectfully submitted,

By: /s/ Hank Fasthoff
Henry "Hank" J. Fasthoff, IV
State Bar No. 24003510
FASTHOFF LAW FIRM PLLC
21 Waterway Ave., Suite 300
The Woodlands, Texas 77380
713.882.0689 (v)
713.588.8778 (f)

**ATTORNEYS FOR PLAINTIFFS**